# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

RAAHKIM EL BEY,

      Plaintiff,               :          Case No. 3:06-cv-257

  -vs-                                    Chief Magistrate Judge Michael R. Merz

                                 :

OFFICER TIM ROOP, et al.,

      Defendants.

## DECISION AND ORDER GRANTING GREENE COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case is before the Court on Motion for Summary Judgment of Defendants Tim Roop, Matt Miller, Darrin Barlow, and Diane L. Bryan (the Greene County Defendants)(Doc. No. 24) which Plaintiff opposes (Doc. No. 28) and as to which the moving Defendants have filed a reply memorandum (Doc. No. 30).  The parties have unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. §636(c) and the case has been referred to the undersigned on that basis (Doc. No. 16).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  On a motion for summary judgment, the movant has the burden of showing

that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id*. The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F. 2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F. 2d 859, 863 (6th Cir. 1986)). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F. 3d 795 (6th

Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.*, 968 F. 2d 606, (6th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

The facts set forth in this Decision are admitted or established by evidence competent under

Fed. R. Civ. P. 56(e) and not controverted by opposing competent evidence.

## Plaintiff's Claims

Plaintiff pleads twenty-one separate claims for relief, all arising from his arrest and jailing in April, 2005. The Greene County Defendants, all of whom are political subdivision employees, seek dismissal on their defense of qualified immunity.

Defendants support their Motion with the Affidavits of Tim Roop, Andrea Frisby, Anthony Keffer, Matt Miller, Darrin Barlow, and Diane L. Bryan. They also attach as Exhibit F a certified copy of a Bench Warrant issued by a judge of the Essex Superior Court in New Jersey for the arrest of Billie Greene.

Although Plaintiff was advised in the Court's Order to Pro Se Plaintiff about the quality of evidence required to oppose a summary judgment motion, and seems to have understood those requirements from the recitations at pages 3-5 of his Response in Opposition (Doc. No. 28), he does not accompany his Response with any affidavits which contest the essential facts shown by the Defendants' Affidavits. Indeed, Plaintiff's sole sworn material seems to be in support of his claim that his legal name is Raahkim El Bey as set forth in the Complaint. The Court takes no position on whether these documents prove that Plaintiff legally changed his name in North Carolina, the place where the proffered documents appear to have been filed for record, or anywhere else. The name by which Plaintiff is legally known is not material to the decision of this matter. For that reason, the Greene County Defendants' objection that Plaintiff is not a real party in interest is also not well taken.

The Affidavits submitted by Defendants establish the following facts: The United States Marshal's Service has as a principal responsibility for the apprehension of fugitives from justice. The

4

Marshal's Service in Dayton, Ohio, received in that regard a request for assistance in apprehending Douglas Ray who was wanted on a federal arrest warrant issued in the Southern District of New York. Mr. Ray had previously told law enforcement officers that he lived at 1580 Greenlake Drive in this judicial district. The marshals also learned he had a former girlfriend named Shakena Goode who resided at that address. Having learned that that address was in Xenia, Ohio, Deputy United States Marshals Frisby and Keffer sought and obtained local uniformed back-up from Defendants Roop and Miller and went to Ms. Goode's residence. Plaintiff describes this location as his residence, but he does not deny that it was at the time also the residence of Ms. Goode. When Marshal Frisby explained her business to Ms. Goode, she was permitted to enter the residence and immediately began to search it to secure the residence and to see if Mr. Ray was there. Marshal Frisby avers that Plaintiff bears a striking resemblance to Mr. Ray. She accordingly ordered him handcuffed until his identity could be confirmed. Plaintiff gave his name as Raakhim El Bey and refused to provide his Social Security Number. Defendant Roop then found a Social Security Number in plain view and confirmed that the number was assigned to one Billie Greene. The NCIC was queried for that name and Social Security Number and Defendants found that Billie Greene was wanted on a fugitive warrant from the State of New Jersey. Deputy Marshal Keffer asked Mr. El Bey if he had ever used the name "Billie Greene," and he advised that he had legally changed his name from "Billie Josef Andre Greene, Jr." to Raakhim El Bey. Plaintiff's submission in opposition to the Motion for Summary Judgment contain his own declaration in support of the name change which show his name on his birth certificate to have been "Billie Josef Greene Jr."

    Plaintiff was thereupon arrested and taken to the Greene County Jail. A formal fugitive warrant, sworn to by Defendant Barlow, approved by Greene County Prosecutor Schenck, and issued by Defendant Bryan as authorized under Ohio R. Crim. P. 4, was then executed on Plaintiff. He was released on bail by an acting judge and the fugitive warrant was eventually dismissed when

New Jersey decided not to pursue the charges.

## Standard for Qualified Immunity

Government officials performing discretionary functions are afforded a qualified immunity under 42 U.S.C. §1983 as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir., 1994); *Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir. 1994). The question is not the subjective good or bad faith of the public official, but the "objective legal reasonableness" of his or her action in light of clearly established law at the time the official acted. *Anderson v. Creighton*, 483, U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

Qualified immunity analysis involves three inquiries: (i) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005), *quoting Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). Qualified immunity must be granted if the plaintiff cannot establish each of these elements. *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004).

In order for the violated right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right; in light of pre-existing law, the unlawfulness of the official's action must be apparent. *Anderson v. Creighton*, 483 U.S. at 640. The right must be defined at the appropriate level of

specificity to determine whether it was clearly established at the time the defendants acted. *Wilson v. Layne*, 526 U.S. 603, 615 (1999), citing *Anderson v. Creighton.* The test is whether the law was clear in relation to the specific facts confronting the public official when he acted; the constitutional right must not be characterized too broadly without considering the specific facts of the case. *Guercio v. Brody*, 911 F.2d 1179 (6th Cir. 1990). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir. 1992). Although the very action in question need not have previously been held unlawful, its unlawfulness must be apparent in light of pre-existing law. *Id.* An action's unlawfulness can be apparent from direct holdings, specific examples described as prohibited, or from the general reasoning that a court employs. *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002), citing *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2516-17, 153 L.Ed.2d 666 (2002).

If officers of reasonable competence could disagree on an issue, immunity should be recognized. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986); *Mumford v. Zieba*, 4 F.3d 439, 432 (6th Cir. 1993); *Gossman v. Allen*, 950 F.2d 338, 341 (6th Cir. 1991). A probable cause determination, even if wrong, is not actionable as long as it was a reasonable determination. Reasonableness is a question of law for the trial judge. *Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991).

Because qualified immunity is an immunity from suit as well as from damages, a public official who pleads a qualified immunity defense is entitled to have that defense decided before the case proceeds even to discovery. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985); *Dominque v. Telb*, 831 F.2d 673 (6th Cir. 1987); *Poe v. Haydon*, 853 F.2d 418 (6th Cir. 1988). When faced with a motion for summary judgment based on qualified immunity, a district court must decide it and errs by denying it based

solely on the fact that discovery is not complete. *Summers v. Leis*, 368 F.3d 881 (6th Cir. 2004), *citing Skousen v. Brighton High School,* 305 F.3d 520 (6th Cir. 2002). Resolution of qualified immunity is a pure question of law for the Court. *Virgili v. Gilbert,* 272 F.3d 391, 392 (6th Cir. 2001)*; Dominque*, 831 F.2d at 677; *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). The trial judge is to apply the purely objective test of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), as a matter of law before discovery occurs. *Windsor v. The Tennessean*, 719 F.2d 155 (6th Cir. 1983).

District courts are to apply a two-part sequential analysis. They must first determine whether the alleged facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. The next step is to decide if the right was clearly established. *Brosseau v. Haugen*, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004); *Klein v . Long,* 275 F.3d 544 (6th Cir. 2001), *citing Saucier v. Katz*, 533 U.S. 194 (2001).

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004), citing *Saucier* v. *Katz*, 533 U.S., at 206, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force'").

**Analysis**

As a *pro se* civil rights litigant, Plaintiff is entitled to a liberal construction of his pleadings. *Haines v. Kerner*, 404 U.S. 519 (1972). Plaintiff's Complaint and Response in Opposition are construed in that light.

Plaintiff seems to be asserting a right under the First Amendment Free Exercise Clause to be known by or dealt officially with only in terms of the name in which he brought suit, Raakhim

8

El Bey. The Court assumes for purposes of this Decision that there are religious dimensions[1] to the choice of a name and that some state actions which interfered with that choice would be unconstitutional. For example, it is well known that Christians often use the names of recognized Christian saints as first names to be conferred upon children at the time of the sacrament of baptism. The State would have to show a very compelling reason for interfering with that practice.

At this point, however, it is important to remember the requirement that constitutional rights be construed narrowly for qualified immunity purposes. Whatever constitutional rights may be associated with the choice of a personal name, nothing in the Constitution allows a person to avoid criminal liability incurred under one name merely by changing that name, regardless of the religious or cultural motivation for the name change. In this case, Billie Greene was wanted on an apparently valid arrest warrant issued by a court in the State of New Jersey and the Plaintiff, by what ever name known, has the same Social Security number and fingerprints as Billie Greene. Defendants committed no constitutional violation, when they arrested the Plaintiff on the basis of a their well-founded belief that he was the same person wanted on the arrest warrant issued for Billie Greene in New Jersey. Because the defendants committed no constitutional violation in making the arrest on the basis of that belief, they are immune from any liability for that arrest based upon Plaintiff's change of name.

Plaintiff asserts several rights having to do with Defendants' entry into his residence, search for identification, handcuffing, and arrest. All of these assertions would appear to raise Fourth Amendment violation questions.

Plaintiff first asserts that the Defendants Roop and Williams had no right to enter his

---

[1] Plaintiff also refers to adherence to a "culture" as well as a faith. Additional proof of what adherence to a culture means would be required before the Court could find that any such asserted right was protected by the First Amendment which by its express terms protects the free exercise of religion, not culture.

9

residence, *citing Payton v. New York*, 445 U.S. 573 (1980). However, it appears to be conceded that it was also the residence of Shakena Goode and she allowed them into the residence. Indeed, the officers advise that she was cooperative with them, admitted that the fugitive Donald Ray had recently been in the residence, and sought to help them find him. Once a person with authority to give consent for a search has given that consent, searching police officers need not obtain consent from every one who is present. The officers committed no constitutional violation by entering the house with Ms. Good's consent regardless of Plaintiff's refusal of consent. *Compare Georgia v. Randolph,* 126 S. Ct. 1515 (2006).

Once law enforcement officers are validly inside a residence to conduct a search, they have the right to secure the persons present while the search is conducted. *Muehler v. Mena*, 125 S. Ct. 1465 (2004). Therefore, the officers violated no constitutional rights of the Plaintiff when they handcuffed him until they had determined that the fugitive they sought was not present. Both United States marshals have provided affidavits of averring that Plaintiff bears a striking resemblance to the fugitive; Plaintiff says he does not. This difference of opinion does not create a material issue of fact requiring trial because the officers have authority to secure the Plaintiff while they conducted their search for the fugitive, regardless of whether the two resembled one another.

Before they had unhandcuffed Plaintiff, the officers determined that, although he was not the fugitive, he was a person wanted on an outstanding arrest warrant issued by a judge in the State of New Jersey. The Social Security number which was found in plain view created probable cause to believe that the Plaintiff was a person wanted on the arrest warrant. Plaintiff had no constitutionally protected privacy interest in refusing to have the officers check that Social Security number against the NCIC computer database. Of course once the plaintiff admitted that he had legally changed his name from Billie Greene to Raakhim El Bey, the officers had further corroborated their probable cause for his arrest.

10

A §1983 plaintiff claiming wrongful arrest cannot prevail by demonstrating that the arresting officer violated a state law requirement that the misdemeanor be committed in the officer's presence. That requirement is not grounded in the Fourth Amendment. To prevail, a plaintiff must prove an absence of probable cause. *Pyles v. Raisor,* 60 F.3d 1211(6th Cir. 1995), citing *Barry v. Fowler*, 902 F.2d 770 (9th Cir. 1990). It is clearly established that arrest without probable cause violates the Fourth Amendment. *Donovan v. James,* 105 F. 3rd 291, 297-98 (6th Cir. 1997). Probable cause is to be assessed from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Kostrzewa v. City of Troy*, 247 F. 3rd 633, 639 (6th Cir. 2001), quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989). Probable cause determinations involve an examination of all the facts and circumstances within the officer's knowledge at the time of arrest. *Gardenshire v. Schubert,* 205 F. 3rd 303, 315 (6th Cir. 2000). But once an officer has probable cause, he need not investigate further. *Gardenshire, supra; Estate of Dietrich v. Burrows,* 167 F. 3rd 1007, 1012 (6th Cir. 1999).

Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge "were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964). In order for a wrongful arrest claim to succeed under §1983, a plaintiff must prove that the police lacked probable cause. *Painter v. Robertson*, 185 F. 3rd 557, 569 (6th Cir. 1999). A police officer has probable cause if there is a "fair probability" that the individual to be arrested has either committed or intends to commit a crime. *Northrop v. Trippett,* 265 F. 3rd 372, 379 (6th Cir. 2001)(quoting *United States v. Sokolow,* 490 U.S. 1, 7 (1989)). A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform "a prudent person, or one of reasonable caution," that the suspect "has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31,

37 (1979).

A law enforcement officer who has probable cause to make an arrest has committed no constitutional violation when he or she effects that arrest. Plaintiff was lawfully arrested on the basis of a warrant issued by a judge in the State of New Jersey. The officers were not required to have that warrant in their hands when they made the arrest nor were they required to give a copy to the Plaintiff at that time. Plaintiff does not deny any of the essential facts giving rise to the probable cause. Nor does he deny that he is in fact the person who was wanted on the warrant in New Jersey.

The probable cause to arrest which officers Roop and Williams had at the time they took Plaintiff into custody was not dissipated by the time that Defendant Barlow filed the affidavit supporting the fugitive warrant. In other words, Barlow had the same probable cause to believe that the plaintiff was the person wanted on the fugitive warrant from New Jersey that Roop and Williams had when they initially made the arrest. Thus, Defendant Barlow violated no constitutional rights of the Plaintiff when he swore out the fugitive warrant. Defendant Bryan committed no constitutional violation. When she issued the arrest warrant based upon Barlow's affidavit. Indeed, because issuance of an arrest warrant upon an affidavit showing probable cause is a judicial function, Ms. Barlow is entitled to absolute immunity for her acts. A clerk of courts is absolutely immune from liability because their duties are quasi-judicial in nature. *Foster v. Walsh,* 864 F.2d 416 (6th Cir. 1988); *Denman v. Leedy*, 479 F.2d 1097 (6th Cir. 1973).

Because none of the Defendants violated any of Plaintiff's constitutional rights, the Court need not proceed further to determine whether any of the assertedly violated rights were clearly established at the time the Defendants acted. *Siegert v. Gilley*, 500 U.S. 226 (1991).

There are no genuine issues of material fact, and all of the Greene County Defendants are entitled to judgment as a matter of law. Their motion for summary judgment is granted.

The Court notes that the Clerk entered judgment on the Court's prior order granting the

summary judgment motion of Defendant Schenck (Doc. No. 32).  That judgment is hereby vacated pursuant to Fed. R. Civ. P. 54 (b) and the Clerk shall enter judgment dismissing all claims herein with prejudice.

December 29, 2006.                                                   s/ Michael R. Merz
                                                                     Chief United States Magistrate Judge